UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

INDEPENDENCE CENTER NEWCO LLC )
               Plaintiff,              )
                            )
v.                             )       CIVIL ACTION NO.  1:18-cv-10527-ADB
                            )
WAXY'S KINGSTON LLC  d/b/a WAXY'S)
               Defendant           )

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## MOTION TO DISMISS THE COUNTERCLAIMS

## I.      INTRODUCTION

Despite the fact that the Massachusetts appellate courts have made clear that a general "integration clause" in a commercial agreement cannot serve as a bar to a claim of fraud, the Plaintiff has moved to dismiss the Defendant's Counterclaims, pursuant to Rule 12(b)(6), primarily on that basis.  Defendant Waxy's Kingston LLC ("Defendant" or "Waxy's") has asserted these Counterclaims for Fraud in the Inducement, Negligent Misrepresentation, and for violations of G.L. c. 93A, § 11.  The arguments that Plaintiff Independence Center Newco LLC ("Plaintiff" or Independence") asserts in its Motion to Dismiss Counterclaims [ECF No. 13] lack merit, and Defendant accordingly opposes Plaintiff's Motion for the following reasons.

First, a general "integration clause" cannot, in Massachusetts, bar a claim of fraud in the inducement—to cause the counterparty to enter into that agreement—as a matter of law.  The reason is a long-established one of public policy, that this Commonwealth simply will not allow a party to attempt to contract around its own fraud.  Second, and relatedly, it is improper to seek dismissal of a claim of negligent misrepresentation based upon an "integration clause" at the pleading stage.  A factual record needs to be developed concerning the circumstances under which the agreement was signed, how it was negotiated, and how the parties were represented.

Third, as the "integration clause" cannot serve as a bar as a matter of law to Defendant's assertion of reasonable reliance upon Plaintiff's misrepresentations, Plaintiff likewise contends that reliance would be unreasonable because the language of the Lease supposedly contradicts these misrepresentations.  Contrary to Plaintiff's position, though, and especially at the pleading stage, the language of the Lease is not in direct conflict with these misrepresentations, and certainly not so much so as the statements as to be "preposterous or palpably false."  Fourth, Plaintiff's misrepresentations are likewise neither mere puffery, nor simple opinion as to future events, as they concern direct statements of fact, and likewise state a present intention as to future conduct that the speaker lacked an intention to perform when made.  Finally, it is particularly improper for Plaintiff to perfunctorily call for dismissal of Defendant's counterclaim under G.L. c. 93A for the same reasons as its common-law counterclaims, especially when Plaintiff's primary argument rests upon an alleged lack of reasonable reliance as a matter of law, and yet a Chapter 93A claim does not require reliance as an element.

For these reasons, and those stated as follows, Defendant respectfully requests that Plaintiff's Motion be denied.

## II.  <u>ARGUMENT</u>

### A.  LEGAL STANDARD

The standard to be applied on a Rule 12(b)(6) motion to dismiss places a light burden on the non-moving party.  "Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" which "needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'"

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 11-12 (1st Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

      Under the "two-pronged approach" employed within the First Circuit, a Court undergoes two steps "[i]n resolving a motion to dismiss." *Id.* at 12. First, the Court disregards "conclusory" allegations, which are defined as "allegations that merely parrot the elements of the cause of action." *Id.* (citation omitted). As the First Circuit has described, "[a]llegations of discrete factual events . . . are not 'conclusory' in the relevant sense." *Id.* at 14; *see also Cardigan Mountain School v. N.H. Ins. Co.*, 787 F.3d 82, 86 (1st Cir. 2015) (same). "A conclusory allegation . . . is one which simply asserts a legal conclusion, such as 'I was retaliated against,' not a specific factual allegation, such as 'my supervisor threw a book at me,' that merely lacks some surrounding context." *Rodriguez-Vives v. P.R. Firefighters Corps of P.R.*, 743 F.3d 278, 286 (1st Cir. 2014) (citing *Ocasio-Hernandez*, 640 F.3d at 13-14). For these purposes, even averments that are more "general" in nature are still considered "factual, not conclusory" and "must, at the pleadings stage, be given credence." *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 55 (1st Cir. 2013) (citing *Ocasio-Hernandez*, 640 F.3d at 15).

      Second, once any bare legal conclusions are disregarded, "factual allegations in the complaint must then be treated as true, even if seemingly incredible," and "[i]f that factual conduct, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Ocasio-Hernandez*, 640 F.3d at 12 (quoting *Iqbal*, 556 U.S. at 677-81); *see also Cooper v. Charter Commc'ns Entertainments I, LLC*, 760 F.3d 103, 106 (1st Cir. 2014) ("We ask 'whether the complaint states a claim to relief that is plausible on its face, accepting the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor.'") (quotation omitted); *Rodriguez-Reyes*, 711 F.3d

at 52-53 (same).  "At the pleading stage, the plaintiff need not demonstrate that she is likely to prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'"  *Garcia-Catalan v. U.S.*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

The First Circuit has often cautioned that the test of whether a reasonable inference can be drawn of a plausible claim from the facts as alleged in the pleading is not to be confused with persuasiveness or a quantum of proof as relevant at later stages of the action.  "To achieve plausibility, a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial."  *Medina-Velazquez v. Hernandez-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citation omitted).  "The prima facie standard is an evidentiary standard, not a pleading standard, and there is no need to set forth a detailed evidentiary proffer in a complaint."  *Id.* (quoting *Rodriguez-Reyes*, 711 F.3d at 54).  "'[C]ircumstantial evidence often suffices' to render an asserted claim plausible in the pleading context."  *Cardigan*, 787 F.3d at 87 (quoting *Garcia-Catalan*, 734 F.3d at 103).  "[A] high degree of factual specificity is not required."  *Medina-Velazquez*, 767 F.3d at 110 (citation omitted);  *Rodriguez-Reyes*, 711 F.3d at 56 (same).

Lastly, the allegations of the complaint must be read cumulatively, and not in isolation, because "[t]he question confronting a court on a motion to dismiss is whether *all* the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible."  *Ocasio-Hernandez*, 640 F.3d at 14 (emphasis in original) (citations omitted);  *see also Garcia-Catalan*, 734 F.3d at 103 ("We emphasize that the complaint must be read as a whole" and "holistically").  "In the end, 'there need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the cumulative effect of the complaint's factual allegations.'"  *Medina-Velazquez*,

767 F.3d at 108-09 (quoting *Rodriguez-Reyes*, 711 F.3d at 55) (internal quotation marks omitted).

## B. A GENERAL "INTEGRATION CLAUSE" DOES NOT BAR A CLAIM OF FRAUD IN THE INDUCEMENT AS A MATTER OF LAW.

The vast majority of Plaintiff's Memorandum is devoted to a single argument: that Defendant's counterclaims, which generally assert that Plaintiff made false statements to Defendant to induce it into entering into the subject lease, are purportedly barred as a matter of law by Section 23.16 of the subject Lease, which Plaintiff refers to in its Memorandum, at 1, as a "comprehensive integration clause." Plaintiff contends that this makes Defendant's reliance upon Plaintiff's false statements unreasonable as a matter of law. Plaintiff ignores that this Court, deciding claims under Massachusetts common law and statute, sitting in diversity jurisdiction, follows Massachusetts appellate authority,[1] and those cases hold that an integration clause is not a bar to a claim of fraud. While Plaintiff might contend that Defendant could not bring claims on the contract (the Lease) for Plaintiff's false statements regarding mall tenants and improvements, Defendants' counterclaims do not sound in contract, but rather in fraud.[2] There is no counterclaim here for breach of contract.

---

[1] *See, e.g.*, *Caldwell Tanks, Inc. v. Haley & Ward, Inc.*, 471 F.3d 210, 217-18 (1st Cir. 2006).
[2] For instance, on pages 4-5 of its Memorandum, Plaintiff incorrectly cites *Linear Retail Danvers #1, LLC v. Casatova, LLC*, for the proposition that "[t]he Lease creates no obligation for Independence to do anything to upgrade the mall, and evidence of oral representations to the contrary is inadmissible." No. Civ. A. 07-3147, 2008 WL 2415410, at *3 (Mass.Super.Ct. June 11, 2008). *Linear Retail* was a decision concerning a motion to dismiss counterclaims that a commercial tenant had brought concerning misrepresentations as to improvements to the premises that the landlord had made as an inducement to the subject lease. *See id.* at *1. The portion of the opinion that Plaintiff cites actually concerns the counterclaim for breach of contract, as to which the motion to dismiss was allowed, and *not* the counterclaims for fraud in the inducement and a violation of G.L. c. 93A, as to which the Court expressly denied the motion. *See id.* at *2. What is more, the Court expressly held that while the landlord "argue[d] a merger clause in the lease agreement preclude[d] any claims sounding in fraud or fraud in the inducement, [c]ontrary to [the landlord's] argument, however, '[i]t is well established that the parol evidence rule does not apply when the complaining party alleges fraud in the inducement.'" *See id.* at *2 n.3 (quoting *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 711 n.5 (1990)). Moreover, on the same day, that same judge in *Linear Retail* also considered the landlord's motion for summary judgment as to the guarantors to the lease, and denied it based upon the same defense of fraud in the inducement. *Linear Retail Danvers #1, LLC v. Casatova, LLC*, Civ. No. Civ. A. 07-3147, 2008 WL 2415402, at *2-3 (Mass.Super.Ct. June 11, 2008). The Court likewise made clear that "a

Contrary to Plaintiff's supposition, Massachusetts case law is actually very clear that "in cases of fraudulent inducement, relief is not barred by an integration clause, even where the parties are sophisticated and their bargaining powers are equal." *Shawmut-Canton LLC v. Great Spring Waters of Am., Inc.*, 62 Mass.App.Ct. 330, 335 (2004) (vacating summary judgment on fraud in the inducement counterclaim) (citing, *e.g.*, *Bates v. Southgate*, 308 Mass. 170, 183 (1941)). This is "long-settled law in this Commonwealth." *Greenleaf Arms Realty Trust I, LLC v. New Boston Fund, Inc.*, 81 Mass.App.Ct. 282, 287 (2012); *see also Arabian Support & Servs. Co. v. Textron Sys. Corp.*, 851 F.3d 1, 8 (1st Cir. 2017) ("It is well settled in Massachusetts that an integration clause does not insulate automatically a party from liability where he induced another person to enter into a contract by misrepresentation.") (internal quotation marks and brackets omitted) (quoting *Kenda Corp. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 226 (1st Cir. 2003)).

"A party to a contract with another cannot claim shelter by a contractual device, such as an exculpatory or merger provision, against claims of deceit." *Greenleaf*, 81 Mass.App.Ct. at 288-89 (citing, *e.g.*, *Bates*, 308 Mass. at 182-83); *see also Billingham v. Dornemann*, 55 Mass.App.Ct. 166, 173 (2002) (same). As the SJC held in *Bates*:

> [T]he law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it. No one advocates a return to outworn conceptions. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement. To deny this possibility is to ignore the frequent instances in everyday experience where parties accept, often without critical

claim or defense based on fraud in the inducement survives an express waiver of a right to make such a claim." *Id.* at *3 n.3 (citing *Pemstein v. Stimpson*, 36 Mass.App.Ct. 233, 288 (1994)). Plaintiff likewise cites to *Realty Fin. Holdings, LLC v. KS Shiraz Manager, LLC*, which affirmed summary judgment of a contractual dispute and did not suggest to be resolving a claim for fraud in the inducement. 86 Mass.App.Ct. 242, 248 (2014).

> examination, and act upon agreements containing somewhere within their four
> corners exculpatory clauses in one form or another, but where they do,
> nevertheless, in reliance upon the honesty of supposed friends, the plausible and
> disarming statements of salesmen, or the customary course of business.  To refuse
> relief would result in opening the door to a multitude of frauds and in thwarting
> the general policy of the law.

308 Mass. at 182.  "It is a fundamental principle of law, as it is of morals, public policy and fair

dealing, that a party cannot contract against liability for his own fraud," and "fraud if established

is not merged in the contract."  *Greenleaf*, 81 Mass.App.Ct. at 290 (quoting *Sandler v. Elliott*,

335 Mass. 576, 586 (1957); *Granlund v. Saraf*, 263 Mass. 76, 79 (1928)).  As the SJC found in

*McEvoy Travel Bureau, Inc. v. Norton Co.*, referring to its earlier *Bates* decision as "the leading

case" on the topic, it stated that it saw "no reason to create" "a new rule or an exception to fit

cases between sophisticated business enterprises involving contracts which have been induced by

the fraud of a party."  408 Mass. 704, 712-13 (1990).

This is especially so when the counterclaims here are only at the pleading stage, very

early in the action, and for the purposes of a motion to dismiss, must be evaluated with all facts

and inferences read most favorably to Waxy's.  It is especially the case that a purported

integration clause cannot stand as a bar to a claim of fraud in the inducement when it is

boilerplate.  *See id.* at 712 ("the jury could have found in this case that the . . . provision . . . was

not mentioned during negotiations but rather had been inserted unilaterally by [the

counterparty]").[3]  With inferences read most favorably to Waxy's at this stage, what

Independence refers to as a "comprehensive integration clause" was mere boilerplate, indeed

bolstered by Plaintiff's own insistence on Page 2 of its Memorandum that "***[t]he exact same***

---

[3] *C.f. Realty Finance*, 86 Mass.App.Ct. at 249 ("We contrast cases dealing with agreements where the form of the writing is brief or boilerplate, or where the parties are mismatched.  It is true that in such circumstances, 'proof could be received ranging beyond the writing proper' to determine whether the parties intended full integration.") (quotation omitted and citing cases).

*language*" was evaluated by a Massachusetts Superior Court judge roughly 25 years ago.[4]  If

Independence has been forcing the same form lease language on its tenants for a generation, it is

plainly a reasonable inference that these provisions are not the product of such granular

negotiation with each individual tenant so as to warrant the extreme remedy of precluding a

fraud claim as a matter of law.  It is even plainer that at this stage of the action, all facts must be

construed in favor of Waxy's, and so for evaluation of the motion to dismiss, this language must

be treated as boilerplate.[5]

### C.   NOR COULD A GENERAL "INTEGRATION CLAUSE" BAR A CLAIM OF NEGLIGENT MISREPRESENTATION AT THE PLEADING STAGE, BEFORE THE OPPORTUNITY TO ENGAGE IN DISCOVERY AS TO THE NATURE OF THE SIGNING OF THE SUBJECT LEASE AND ANY NEGOTIATION THEREOF.

The same is true of Defendant's counterclaim for negligent misrepresentation, especially

since this case is only at the pleading stage.  It is true that the Appeals Court in *Sound*

*Techniques, Inc. v. Hoffman* held, in an appeal taken following a jury verdict, that by contrast to

a claim for fraud in the inducement, an integration clause could bar a claim for negligent

misrepresentation.  50 Mass.App.Ct. 425, 429-34 (2000).  Two distinguishing factors, by

contrast to the case at bar, bear immediate mention, however.  First is that the Court in *Sound*

*Techniques* was careful to limit its holding to the "particular circumstances of the case," *see id.* at

434 n.11, which included detailed facts as found after trial including the circumstances of the

contractual negotiation and how the party claiming negligent misrepresentation was represented

---

[4] *See Pizzeria Uno of Kingston, Inc. v. Independence Mall Grp.*, 11 Mass.L.Rptr. 241, Civ. A. No. 94-5546, 1995 WL 419932, at *2 (Mass.Super.Ct. July 13, 1995) (citing language identical to that of Section 23.16 of the Lease).
[5] Plaintiff's citation in Footnote 2 of its Memorandum to Section 23.24 of the Lease, likewise boilerplate, does not aid Plaintiff's cause either.  For one, contrary to Plaintiff's statement in the Memorandum, at 5, it does not "acknowledge[]" that Waxy's was "represented by counsel" in the negotiations.  It actually states (with emphasis added) that "[t]his Lease has been negotiated at arms length by both parties after advice by counsel *or other representatives chosen by such parties*."  Regardless, reading that sub-section of the Lease as a whole, and especially in a light most favorable to Waxy's on the posture of the present motion practice, what it actually concerns is whether or not ambiguities in the Lease will be construed against Independence, as drafter and Landlord.

in the process of that negotiation, *see id.* at 426-27.  As the Court stated directly, it "expressly le[ft] for another day" other factual situations, including in which there was a "gross disparity in the bargaining positions of the parties."  *Id.* at 434 n.11.  With all facts presently read most favorably to Waxy's, there was such a disparity here, as Waxy's, a small business, operates "a limited number of" restaurants, almost exclusively "in the New England area," *see* Countercl. ¶ 10, by comparison to Independence, an affiliate of Pyramid Management Group, Inc., the largest privately held shopping mall developer in the Northeast United States, which operates <u>sixteen</u> entire shopping center complexes, *see id.* ¶ 4.

Second, and relatedly, *Sound Techniques* was a case in which the posture of the action was far more advanced than the one at bar, indeed following a jury verdict.  As stated above, the facts that the Appeals Court relied upon in determining that the integration clause could bar a claim for negligent misrepresentation, in the particular circumstances of the lease negotiation at issue, were facts as found after live testimony, and subject to cross-examination.  This case is only at the motion to dismiss stage.  As the SJC held in *Marram v. Kobrick Offshore Fund, Ltd.*, vacating the trial court decision allowing a motion to dismiss a claim for negligent misrepresentation, while Massachusetts courts have sometimes found reliance unreasonable as a matter of law, this was "generally only after some record has been established on a motion for summary judgment or after a trial."  442 Mass. 43, 59-60 (2004) (citing cases);  *see also Shawmut-Canton*, 62 Mass.App.Ct. at 335 n.5 (citing *Marram* for the proposition that "notwithstanding an integration clause, it was error to dismiss a claim for negligent misrepresentation pursuant to [Rule] 12(b)(6)").  While there is not the same generalized public policy bar to invocation of an integration clause in the face of negligent misrepresentation as there is with a claim of fraud in the inducement, a fuller record, following discovery into the

circumstances of the negotiation of the subject Lease, is still necessary to resolve Waxy's claim

of negligent misrepresentation as well.  Dismissal at this stage is improper.[6]

> **D.**   **THE LANGUAGE OF THE SUBJECT LEASE IS NOT SO DIRECTLY CONTRARY TO THE MISREPRESENTATIONS ASSERTED IN DEFENDANT'S COUNTERCLAIMS SO AS TO CAUSE THESE MISREPRESENTATIONS TO RISE TO THE LEVEL OF "PREPOSTEROUS OR PALPABLY FALSE," AS WOULD BE NECESSARY TO MAKE RELIANCE UPON THEM SOMEHOW UNREASONABLE AS A MATTER OF LAW.**

Putting aside the effect of the "integration clause," Plaintiff only appears to have one

additional argument as to why it says Defendant's reliance upon Plaintiff's false statements was

purportedly unreasonable as a matter of law:  because these statements purportedly "conflicted

with the plain language of the Lease."  *See* Mem. at 7.  Plaintiff concedes in its Memorandum at

6, as it must, that "reliance is generally a fact question," because the SJC has actually directly

stated as much.  *Marram*, 442 Mass. at 59 ("justifiable reliance . . . normally is a question for a

jury").  The limited exception is when there are "contrary written statements," but this exception

is narrow, and cabined to circumstances in which there is such a direct conflict between the

claimed misrepresentations and a specific provision of the written agreement between the parties

that the misrepresentations could be deemed "'preposterous or palpably false' in [the] face of

contradictory written statements."  *See id.* at 59-60 (citing, *e.g.*, *Yorke v. Taylor*, 332 Mass. 368,

374 (1955));  *see also Kenda*, 329 F.3d at 227 (same);  *Damon v. Sun Co.*, 87 F.3d 1467, 1480

(1st Cir. 1996) ("Only reliance on 'preposterous or palpably false' representations vitiates a

misrepresentation claim.") (quotation omitted); *Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 81

(1991).  Accordingly, while "[a]n integration clause in a contract does not insulate automatically

---

[6] It is also unclear on what basis Plaintiff in footnote 4 of its Memorandum cites *Cherry v. Crispin*, 346 Mass. 89 (1963), purportedly for the basis that "[n]egligent misrepresentation does not provide an excuse from performance." The *Cherry* case, which affirmed rescission of a home purchase for fraud in the inducement concerning a termite infestation, does not look to have mentioned negligent misrepresentation at all.  *See id.*

a party from liability where he induced another person to enter into a contract by misrepresentation, . . . [n]evertheless, if 'the contract was fully negotiated and voluntarily signed, [then] parties may not raise as fraudulent any prior oral assertion inconsistent with ***a contract provision that specifically addressed the particular point at issue***.'" *Starr v. Fordham*, 420 Mass. 178, 188 (1995) (emphasis added) (citing *Turner v. Johnson & Johnson*, 809 F.2d 90, 97 (1st Cir. 1986); *Bates*, 308 Mass. at 182).

An examination of Plaintiff's own cited cases demonstrates just how directly contradictory specific contractual language would have to be to a misrepresentation to cause a claimant's reliance upon that misrepresentation to be unreasonable ***as a matter of law***.  In *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, the writing at issue, a price "quotation," stated directly above the signature that it was not a final deal, but rather "an invitation to offer only," and that "[a]ny contract resulting from the quotation must be accepted at [defendant's] Corporate offices by a duly authorized representative of [defendant]."  438 Mass. 459, 462 (2003).  The alleged misrepresentation at issue was not even that the defendant's representative had supposedly told the plaintiff's representative that the quotation was a final deal, but rather simply that the defendant's representative "did not discuss the qualifying language with" him, and "did not tell [plaintiff's representative] that any further approval was required."  *Id.*  The reason that the SJC held reliance upon this purported misrepresentation—not so much a statement, even, as an alleged failure to disclose—was unreasonable as a matter of law was that it was "obvious" the quotation was not a final deal, because the document said it was not.  *Id.* at 468.  Even still, *Kuwaiti Danish* was an appeal of a JNOV motion, *see id.* at 460, and so it took a factual record far beyond the mere pleadings for the Court to hold lack of reasonable reliance as a matter of law.  *See also Marram*, 442 Mass. at 59-60.

Similarly, in *Sands v. Ridefilm Corp.*, which affirmed summary judgment dismissal of a claim for negligent misrepresentation due to lack of reasonable reliance, the writings at issue once again specifically and directly contradicted the misrepresentation. 212 F.3d 657, 665 (1st Cir. 2000). In three separate written statements, the defendant company advised the plaintiff, a management job applicant, that he did not have a finalized employment agreement with them, but rather "his employment was contingent upon confirmation of a source of funding," and yet the plaintiff claimed that the defendant had assured him "that financing was not an issue." *Id.* Likewise, in *Celtic Dev. Corp. v. F.D.I.C.*, the Court denied a defense of fraud in the inducement (to a counterclaim) on summary judgment because the alleged misrepresentation was directly contradicted by specific—not general—contractual provisions. 836 F.Supp. 926, 938 (D. Mass. 1993).[7] For instance, the plaintiff obligors contended that they were misled into a refinancing by not having been told that their prior note was a three-year promissory note, even though that prior note expressly stated it was a three-year note, including on a page that they initialed. *Id.*

Here, the language of the Lease is simply not on its face so directly contradictory to Plaintiff's misrepresentations to make them "preposterous or palpably false" and reliance upon them somehow unreasonable on the pleadings alone. Beyond the generalized and boilerplate "integration" clause, which as stated *supra* cannot be a legal bar to a claim of fraud, Plaintiff's only purported examples of how the Lease somehow "contradicts" its misrepresentations are found on page 4 of its Memorandum. In this section of its Memorandum, Plaintiff glaringly does not even attempt to identify any provision of the Lease somehow "directly contradicting" its misrepresentations as to specific incoming tenants with which it was purportedly under contract to bring to the mall. *See* Countercl. ¶¶ 13-19 [ECF No. 10, at 8-10].

---

[7] Plaintiff cites this decision for the proposition that an integration clause bars assertion of fraud in the inducement, but the decision did not rest on the integration clause.

The only representations that Plaintiff contends are contradicted by the Lease are those concerning Plaintiff's promised improvements to the mall, and yet those sections of the Lease (for Landlord's and Tenant's Work, and Exhibits B and C to the Lease detailing the same) provide no such direct contradiction at all.  The promised improvements that Waxy's complains of in its Counterclaims, *see* ¶¶ 22-28 [ECF No. 10, at 10-11], are plainly improvements to the shopping center as a whole, external to the site itself in which the Waxy's restaurant was previously located.  The parking lot was not in the Waxy's location, and neither was the food court, nor in material part the "entranceways" to the mall.  And yet, all that "Exhibit B" to the Lease [ECF No. 5-2, at 53], governing "Landlord's Work" concerns (with emphasis added) is that "Landlord has no obligation to perform any work in connection with the build out of the *Premises*."

The "Premises" is a defined term set forth in Section 1.01 of the Lease [ECF No. 5-2, at 11] that represents the specific site within the mall in which the Waxy's restaurant was located, as distinguished from the overall "Shopping Center" that is further defined in Section 1.02.[8] Neither Section 5.01 of the Lease, governing "Landlord's Work," Section 5.02 of the Lease, governing "Tenant's Work," nor "Exhibit C" to the Lease, further specifying "Tenant's Work," governs anything other than the "Premises" either.  It is simply disingenuous for Plaintiff to contend that its misrepresentations as to promised improvements to the general Shopping Center, outside of the Premises, were somehow directly contradicted by contractual language that only concerned work to be done at the Premises, and so much so as to purportedly bar a fraud claim as a matter of law.  There was no reason for the parties to include in the "Exhibit" for "Landlord's Work" such promised improvements to the general Shopping Center as Plaintiff suggests in its

---

[8] The definition of "Premises" in Section 1.01 also specifically excludes "the exterior walls or roof of the building in which said Premises are located or any area beyond the midpoint of any interior wall," and makes clear that the Landlord reserves the right to use the area not included within the Premises and make alterations to the same.

Memorandum at 4, because these provisions of the Lease and their accompanying Exhibits were only meant, on their face, to concern the "Premises" itself.  There is at the very least nothing in these provisions directly contradictory to Plaintiff's misrepresentations as to make reliance unreasonable as a matter of law, and certainly not at the pleading stage, when these contractual provisions must be read in a light most favorable to Waxy's.

> **E.**   **THE MISREPRESENTATIONS ASSERTED IN DEFENDANT'S COUNTERCLAIMS ARE NEITHER MERE "OPINIONS AS TO FUTURE EVENTS" NOR "PUFFING," BUT RATHER ACTIONABLE STATEMENTS OF FACT AND OF PRESENT INTENTION AS TO FUTURE CONDUCT THAT MISREPRESENT THE ACTUAL INTENTION OF THE SPEAKER.**

The only other challenge that Plaintiff appears in its Opposition to make to Defendant's common-law counterclaims, albeit in passing, is to suggest in its Memorandum, at 3, that the statements by its representatives that give rise to the counterclaims are only "opinions as to future events" or "puffing," such that they do not constitute false statements—purportedly as a matter of law as well, given that the posture, again, is on a Rule 12(b)(6) motion.  The misrepresentations upon which Defendant relied are plainly neither non-actionable statements of opinion, nor mere puffery, and so this perfunctory challenge fails as well.

"Statements of present intention as to future conduct may be the basis for a fraud action if . . . the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage."  *Kenda*, 329 F.3d at 226 (quoting *McEvoy*, 408 Mass. at 709).  A "vague promise" is not actionable, but a statement of specific actions to be taken, especially when the speaker does not actually intend to take such actions, or particular factual circumstances that purportedly exist, is by contrast the basis for a claim.  *See id.* at 226-27.  Discussion in *Stolzoff v. Waste Sys. Intern., Inc.*, is likewise instructive:

> Given the circumstances in which such statements were made, however—that the
> company had in fact won contracts to do this very work—the statements were
> embedded in that factual context and the disqualification for statements referring
> to future events does not fairly apply as matter of law.  The defendants were,
> moreover, in a position of superior knowledge as to the viability of any future
> projects because of their awareness of the problems encountered at Fairhaven.

58 Mass.App.Ct. 747, 761-62 (2003).  Here, the actionable statements concern specific tenants

with which Plaintiff was purportedly under agreement to bring to the shopping center (Michael

Kors, Forever 21, and an aquatic-focused outdoor sporting goods store), *see* Countercl. ¶¶ 14-17,

as well as representations of efforts to bring a Dick's Sporting Goods store as well, as to which

the allegation is that Plaintiff never actually had any intention of bringing such a store to the

mall, *see id.* ¶ 18.  In this regard, these misrepresentations are very similar to the fact pattern in

*Kenda*.  The First Circuit in that case found actionable for a claim of fraud in the inducement

that the counterparty, in an effort to induce the claimant to contract to partner with a billiards

league, falsely represented that they had an arrangement in place with an established children's

organization affiliated with Oprah Winfrey, such that there would be a significant number of

children who could be league participants.  *Kenda*, 329 F.3d at 226-27.  For these purposes,

whether or not the claimant went further to investigate the represented agreement was irrelevant,

*see id.*, just as when Independence here represented, bolstered by documentation, that it had

additional tenants in place that were supposedly coming to the mall, but never actually did.

The counterclaims also directly allege specific improvements that Plaintiff represented

would be made to the mall, including to the exterior of the entire mall, the parking lot, the mall

entranceways and the food court, which improvements Defendant alleges Plaintiff had no

intention of making, as evidenced by the fact that the improvements were never actually made.

*See id.* ¶¶ 22-28.  Plaintiff went so far to assure Defendant that these improvements would be

made that it specifically referenced a $50 million line of credit through JP Morgan that it had

already secured to purportedly perform this work. *See id.* ¶¶ 25-26. Again, here, the promise does not stand in isolation, but (as with Plaintiff's representations that it was already under agreement to bring new tenants to the mall) is embedded in the factual context that Defendant had already secured a substantial line of credit, the purpose of which was to all be spent upon these improvements.

What would by contrast constitute non-actionable "opinion" or "puffery" would be financial projections of the mall's potential future performance, or generalized and vague promises as to the quality of work that Plaintiff would perform in managing the mall, which are simply not the sorts of statements that Defendant is relying upon to assert its counterclaims. *Compare Kenda*, 329 F.3d at 225-27 (noting, by contrast, that "a statement that [the defendant] could generate $50 million in revenue" "in the next year," referred to as "projections," could pose a close question as to whether that particular statement could give rise to a fraud claim). An actionable statement of fact is one that is susceptible of the maker's actual knowledge, and "[e]ven a statement that in form is one of opinion 'may constitute a statement of fact if it may reasonably be understood by the recipient as implying that there are facts to justify the opinion or at least that there are no facts that are incompatible with it.'" *See Cummings v. HPG Intern., Inc.*, 244 F.3d 16, 21-22 (1st Cir. 2001) (quoting *McEneaney v. Chestnut Hill Realty Corp.*, 38 Mass.App.Ct. 573, 575 (1995)).[9] As to "puffery," while "the line between misrepresentation and puffery" "is highly fact-specific,"[10] courts generally consider puffery to consist of "rosy affirmations" as to the amorphous "quality" of the services or products to be provided by the maker of the statement, such that a statement can constitute puffery if it is uncoupled from

---

[9] *See also Rodi v. S. New England School of Law*, 389 F.3d 5, 14-15 (1st Cir. 2004) (further noting it particularly inappropriate to dismiss a fraud claim on the basis that it rests on a purported opinion, rather than fact, "at the pleading stage" . . . "[g]iven the liberal standards of Rule 12(b)(6)").
[10] And hence truly generally not conducive to disposition on a Rule 12(b)(6) motion.

specific factual details, and instead "too general and vague to be capable of being proven true or false."  *See generally NPS, LLC v. Ambac Assur. Corp.*, 706 F.Supp.2d 162, 171-75, 179 (D. Mass. 2010).  Puffery is present when a party makes "general statements" that it could provide "better . . . services" than a competitor, *see Burke v. Conversent Commc'ns of Mass., Inc.*, No. 08-P-1286, 2009 WL 1544063, at *1 (Mass.App.Ct. June 4, 2009) (Rule 1:28 Decision), or statements of a "superlative" nature as to its goods and services, such as "elegant" or "first-class condition," *see Rossman v. Herb Chambers Com. Ave., Inc.*, No. 09-P-954, 2011 WL 5604052, at *3 n.3 (Mass.App.Ct. Nov. 18, 2011) (Rule 1:28 Decision) (collecting cases).

        Here, and especially at the pleading stage, Defendant's counterclaims are not based upon financial projections as to future performance, or general, vague statements as to the quality of Plaintiff's management of the mall, but rather specific facts that were capable of being verified or as to which Defendant had every reason to believe there were facts within the Plaintiff's knowledge that supported those statements.  When Independence stated that it had agreements with prospective tenants, and produced plan documentation to support its representations, whether or not Independence was actually in communication with and under agreement with those prospective tenants is a fact capable of being verified, as is whether or not Independence actually intended to bring such tenants to the mall at the time it made statements of present intention with respect to future activity.  Defendant was likewise justified in believing that there were additional facts within the Plaintiff's knowledge that would support the Plaintiff's statements as to tenants that would be coming to the mall.  The same is true of Plaintiff's planned physical improvements for the mall.  The basis for Defendant's counterclaims is not that Plaintiff guessed or projected how the mall would perform financially in the future, but rather that the Plaintiff specifically stated particular improvements that it would make to the mall, and the

funding that it had to make those improvements, which improvements were never made, and

which financing was not used for those purposes.  Again, whether or not Independence ever

actually intended to make those improvements, and how it utilized the line of credit, are facts

that can be verified.  For all of these reasons, dismissal of Defendant's well-pled common-law

counterclaims on a Rule 12(b)(6) motion would be improper.

      **F.**      **PLAINTIFF'S PERFUNCTORY ASSERTION THAT DEFENDANT'S COUNTERCLAIM UNDER G.L. c. 93A, § 11 FAILS PURPORTEDLY FOR THE SAME REASONS AS DEFENDANT'S COMMON-LAW COUNTERCLAIMS IS MISPLACED, ESPECIALLY WHEN RELIANCE BY THE PLEADER IS NOT AN ELEMENT OF A CLAIM UNDER CHAPTER 93A.**

Finally, Plaintiff devotes two sentences of its Memorandum, at 7, to arguing that

Defendant's counterclaim under G.L. c. 93A "also" fails to state a claim because Defendant

supposedly "fails to plead any actionable misrepresentation," which Defendant presumes to

mean that Plaintiff is simply reasserting its same arguments as to Chapter 93A as it does with

respect to the counterclaims for fraud in the inducement and negligent misrepresentation.[11]

But as stated *supra*, virtually all of Plaintiff's argument as to the common-law

counterclaims is devoted to contending that Defendant has failed to plead reasonable reliance as

a matter of law.  Unlike with these common law claims, however, "reasonable reliance . . . is not

necessarily a prerequisite of recovery under G.L. c. 93A, § 11."  *Giuffrida v. High Country*

*Investor, Inc.*, 73 Mass.App.Ct. 225, 241 (2008) (citing *Zayre Corp. v. Computer Sys. of Am.,*

*Inc.*, 24 Mass.App.Ct. 559, 570 (1987));  *see also Sebago, Inc. v. Beazer E., Inc.*, 18 F.Supp.2d

70, 103 (D. Mass. 1998) ("To establish a claim pursuant to ch. 93A, §§ 2 and 11, 'proof of actual

reliance on a misrepresentation is not required so long as the evidence warrants a finding of a

---

[11] To the extent Plaintiff might be arguing in turn that the "integration clause" likewise bars the Chapter 93A counterclaim as well, the First Circuit held to the contrary, citing the same case law as already discussed at length *supra* that explains why an integration clause cannot bar a claim of fraud.  *Arabian Support,* 855 F.3d at 8.

causal relationship between the misrepresentation and the injury to the plaintiff.'") (quoting

*Fraser Engineering Co. v. Desmond*, 26 Mass.App.Ct. 99, 104 (1988); citing *Heller Fin. v. Ins.*

*Co. of N. Am.*, 410 Mass. 400, 409 (1991) (G.L. c. 93A, § 11 claim)).  This is because a Chapter

93A claim is derived from statute, not the common law.  What is an "actionable 'unfair or

deceptive act or practice' goes far beyond the scope of the common law action for fraud and

deceit," such that "proof of actual reliance by the plaintiff on a representation is not required."

*See Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 703 (1975) (citation omitted);  *see also Com.*

*v. Hale*, 618 F.2d 143, 146-47 (1st Cir. 1980) (citing *Slaney*, *ibid.*).  As the SJC held in *Aspinall*

*v. Philip Morris Cos.*:

> A successful G.L. c. 93A action based on deceptive acts or practices does not
> require proof that a plaintiff relied on the representation, or that the defendant
> intended to deceive the plaintiff, or even knowledge on the part of the defendant
> that the representation was false.  Although our cases offer no static definition of
> the term "deceptive," we have stated that a practice is "deceptive," for purposes of
> G.L. c. 93A, "if it 'could reasonably be found to have caused a person to act
> differently from the way he [or she] otherwise would have acted.'"

442 Mass. 381, 394 (2004) (quotations and citations omitted).

It is even the case "that a party may be found liable under c. 93A, § 11, for having given

false assurances as to future conduct, even though the party's later actions, taken contrary to

those assurances, were contractually permitted."  *Giuffrida*, 73 Mass.App.Ct. at 239.  The

cumulative effect of the allegations of the counterclaims, assumed to be true, with inferences

drawn favorably to Defendant, is that Plaintiff deceived Defendant by falsely assuring that

Plaintiff had new tenants in place for the mall it had no intention of bringing, and was making

improvements to the mall it had no intention of making, to string Defendant along into entering

the Lease.[12]  Plainly at the pleading stage, this is enough to state a claim under Chapter 93A.

---

[12] *See Full Spectrum Software, Inc. v. Forte Automation Sys., Inc.*, 858 F.3d 666, 672-74 (1st Cir. 2017) ("'stringing along a counterparty to induce detrimental reliance can constitute a chapter 93A violation' because 'Massachusetts

### III.   CONCLUSION

For the foregoing reasons, Defendant Waxy's Kingston LLC respectfully requests that this Court deny Plaintiff's Motion to Dismiss Counterclaims [ECF No. 13].

Dated:  May 10, 2018                          Respectfully Submitted,

                                             DEFENDANT
                                             WAXY'S KINGSTON LLC
                                             By its attorneys,

                                              /s/ Matthew A. Gens
                                             Richard B. Michaud, Esq. (BBO No. 345000)
                                             Matthew A. Gens, Esq. (BBO No. 675393)
                                             BERNKOPF GOODMAN LLP
                                             Two Seaport Lane, 9th Floor
                                             Boston, MA  02210
                                             Tel: (617) 790-3000
                                             Fax: (617) 790-3300
                                             E-mail:  rmichaud@bg-llp.com
                                                      mgens@bg-llp.com

### REQUEST FOR ORAL ARGUMENT

In accordance with LR 7.1(d), Defendant respectfully requests a hearing on Plaintiff's Motion to Dismiss Counterclaims [ECF No. 13].  Defendant believes that a hearing would assist the Court in its determination of the motion, especially as this is a dispositive motion, and Defendant respectfully submits, as argued *supra*, that much of Plaintiff's purported authority in support of its motion, especially the authority relied upon for the purported effect of a general "integration clause" as to a claim of fraud, is incorrectly cited.

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) or sent by first-class mail to any persons indicated as non-registered participants on this date.
Signed under the pains and penalties of perjury this 10th day of May, 2018.

          */s/ Matthew A. Gens*

---

cases . . . recognize a need to police negotiations—even those among relatively sophisticated parties—to ensure that they are not unfair or deceptive'") (quoting *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 69-70 (1st Cir. 2009)).

20